Woody BRUNDIGE, Appellant,

v.

The SHERWIN–WILLIAMS COMPANY and the Continental Insurance Company, Appellees.

Court of Appeals of Kentucky.

May 13, 1977.

Hal Warren, Warren & Warren, Fulton, for appellant.

Thomas A. Nanney, Miller & Nanney, Fulton, for appellee.

Before HOGGE, WINTERSHEIMER and VANCE, JJ.

HOGGE, Judge.

This appeal arises from an action for damages allegedly resulting when appellee wrongfully enjoined appellant from operating his retail paint business. Upon motion, the Circuit Court granted summary judgment and entered an order dismissing the action.

Appellant was employed by appellee for approximately 10 years and was party to an agreement whereby he agreed not to open a competing business within 30 miles of Fulton, Kentucky for a period of one year following the termination of his employment with appellee. In June or July of 1975 Sherwin-Williams relocated their place of business to another site in Fulton. Soon thereafter appellant rented the old place of business of Sherwin-Williams and, in August, quit his employment with that company to open a business selling paint and related items at the old location. On October 16 Sherwin-Williams obtained a temporary restraining order preventing appellant from opening his paint store. On October 30 a hearing was held and the Circuit Court denied appellee's motion for a temporary injunction and ordered that the temporary restraining order be dissolved.

At that time, the Circuit Court found that appellee had failed to demonstrate that it would suffer such immediate and irreparable injury as would justify extraordinary relief, and suggested that the appropriate remedy would be an action on the contract. Appellant thereafter brought this action to recover on the injunction bond, posted by appellees, for damages suffered as a result of his being wrongfully prohibited from opening his business while the temporary restraining order was in effect, including lost profits and attorney's fees. Upon appellees' motion, a summary judgment was granted upon the grounds that lost profits are, as a matter of law, too speculative to properly be the subject of damages where a new business is involved.

Appellant claims that, if there was any uncertainty involved, it related to the amount of loss, not whether any loss was sustained. Appellees rely on the case of *Holliday v. Sphar*, 274 Ky. 556, 119 S.W.2d 656 (1938); wherein the court repeated the general rule that, if the business is not an established one, the anticipated profits are too remote and speculative to properly be the subject of damages.

However, the business involved in the *Holliday* case, *supra*, was a gasoline station in a time and place when the profits to be anticipated from such a business were truly speculative. The rule set forth in the *Holliday, supra,* case was quoted from an early Virginia case, *Whitehead v. Cape Henry Syndicate*, 111 Va. 193, 68 S.E. 263 (1910), involving a fishing operation which, by its very nature, is speculative. Furthermore, the court in *Holliday* found that the plaintiff in that case never had any previous experience in the business he proposed to conduct, and that he did not have any reasonable hope of making a profit.

A more detailed explanation of the rule is set forth in 22 *Am.Jur.2d* Damages § 173, at 245, n. 16, wherein it is stated:

Profits are denied in the case of a new business, because they fail to meet the test of certainty. If, in the particular case, it is possible to show, by competent evidence and with reasonable certainty, that profits would have been made and the amount of those profits, they can be recovered.

It may be significant that our research does not disclose that the *Holliday* opinion has ever been followed or even cited by our Court during the 29 years since it was written.

In the cases where the issue of lost profits has arisen, our Court has followed a more flexible standard. In two post *Holliday* decisions the Court has held that lost profits *may*, not must, be determined on the basis of past experience. *Time Finance Company, Inc., v. Beckman*, Ky., 295 S.W.2d 346 (1956); *Eastern Kentucky Lumber & Development Company v. Waddell*, Ky., 239 S.W.2d 68 (1951).

Prior to the *Holliday* decision, the rule in Kentucky was that recovery for lost profits was governed by the same standards as other damages; if there was any evidence, the question was for the jury. *Caudill v. John P. Gorman Coal Company*, 242 Ky. 294, 46 S.W.2d 93 (1932); *Union Cotton Company v. Bondurant*, 188 Ky. 319, 222 S.W. 66 (1920).

In the *Union Cotton Company* case, *supra*, as well as *Avondale Heights Company v. Proctor*, 224 Ky. 188, 5 S.W.2d 1054 (1928), the court allowed awards for lost profits despite the fact that the enterprises injured were in no way established businesses.

In the much more recent case of *Kellerman v. Dedman*, Ky., 411 S.W.2d 315 (1967), the Kentucky Court of Appeals once again allowed an award of lost profits to an enterprise that was in no way an established business. In that case the "business" was an auction of farm property. The plaintiffs were not auctioneers, but were engaged in the business of farming rather than in the business of selling farm machinery. The Court, nevertheless, upheld an award for lost profits where one partner in the farm

had discouraged bidding. In that case, the Court, quoting from *Essock v. Mawhinney*, 3 Wis.2d 258, 88 N.W.2d 659 (1958), stated at page 317:

'* * * * it is now generally held that the uncertainty which prevents a recovery is uncertainty as to the fact of damage and not as to its amount and that where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery * * *'. 'The requirement of certainty does not prevent the drawing of reasonable inferences from the facts and circumstances in evidence; and where a tort is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it is enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result is only approximate.'

In *Flame Coal Company v. United Mine Workers*, 303 F.2d 39 (6th Cir. 1962), the federal Court, quoting from *Story Parchment Company v. Paterson Parchment Paper Company*, 282 U.S. 555, 562–563, 51 S.Ct. 248, 250, 75 L.Ed. 544, 548 (1931), stated:

Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of damages as a matter of just and reasonable inference, although the result be only approximate.

The Court in the *Flame Coal* case, *supra*, cited the *Eastern Kentucky Lumber*, the *Union Cotton*, and the *Time Finance* cases, *supra*, and stated that Kentucky law was not inconsistent with the above statement.

Thus, while the *Holliday* decision has never been overruled, neither has it been followed. Decisions, both before and after the *Holliday* case, indicate that Kentucky does

not adhere to the rigid rule set forth in that case, at least in situations where the tort itself has made it impossible to determine the exact amount of damages with certainty.

In the case of *Smith v. Onyx Oil & Chemical Company*, 218 F.2d 104, (3rd Cir. 1955) the Court was faced with a claim for lost profits where a breach of contract had resulted in the loss of sales of an undeveloped product. The court in that case, citing the great enthusiasm on the part of the plaintiff, and the efficiency of the product, stated at page 111: "We do not think this is a case where it can be said that there would have been no profit to Smith had the contract been performed. We think there would have been some profit. As to the amount, we do not see that our estimate can be any better than that of the trial judge  .  .  ."

■ In the case before us, unlike the *Holliday* case, the appellant had substantial experience in the retail paint sales business; he undoubtedly had a reputation in the community as a man of experience; his place of business was the same building where a business like his had been located for some time; he did open his business almost immediately after the injunction was dissolved; and he made a profit his first month and every month thereafter for the first six months he was in business. Accordingly, we are of the opinion that the *Holliday* case is not controlling.

As in the *Smith* case, *supra*, we do not think this is a case where it can be said that there would have been no profit. We think the facts and circumstances give rise to a reasonable inference that there would have been some profit. Furthermore, it cannot be denied that it was the act of the appellee that prevents an exact determination of the profits lost by the appellant. We are, therefore, constrained by the weight of case law to reverse the judgment of the Fulton Circuit Court.

■ Appellant also alleges that it was error for the Circuit Court to grant summary judgment when the issue of whether appellee should be liable for the attorney fees incurred by appellant was yet to be determined. The trial court held that, in actions of this type, attorney fees are not recoverable as a matter of law. With this conclusion, we agree. Kentucky law on this issue is quite clear. Attorney's fees are not recoverable in an action on an injunction bond where injunctive relief was the only relief sought. *Grant County Board of Education v. Baston et al.*, Ky., 251 S.W.2d 880 (1952).

Affirmed in part; reversed in part.

This case is remanded to the Fulton Circuit Court for further proceedings consistent with this opinion.

All concur.